**STATE of Minnesota, Respondent,**

v.

**Mark JOHNSON, Appellant.**

No. CX–87–2359.

Court of Appeals of Minnesota.

May 10, 1988.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, W.M. Gustafson, Nicollet County Atty., St. Peter, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and FOLEY and FORSBERG, JJ., without oral argument.

**OPINION**

FORSBERG, Judge.

Mark Johnson appeals from a judgment of conviction. We affirm.

**FACTS**

On May 19, 1987, a reliable confidential informant told Officer Yushta that he personally observed L.D., a juvenile, drinking beer and smoking marijuana with appellant Mark Johnson and others at Johnson's apartment. The informant said that Johnson and another adult, Jim Hoppe, were planning to leave the apartment shortly. Yushta had an apprehension order for L.D., and he and four other officers went to Johnson's apartment immediately.

Yushta testified that he had to pound on Johnson's door several times because the stereo inside was loud. Eventually, Johnson and Hoppe opened the door. Yushta told them that he was there to get L.D. They admitted that L.D. was inside. Yushta smelled marijuana and alcohol. Looking through the open door, Yushta saw a mari-

juana pipe on a counter inside the apartment.

Yushta testified that Johnson and Hoppe moved away from the door and allowed two of the officers to enter. Hoppe and Johnson claimed they objected to the entry. Yushta stepped into the kitchen area, and then pushed aside a curtain between the kitchen and living room. In the living room, Yushta found three juveniles, L.D., R.B., and C.F., and one other adult, Tammy Filand. He also saw another marijuana pipe.

Yushta arrested the juveniles and took them downtown. Filand accompanied C.F. Filand and C.F. gave statements to the effect that R.B. and C.F. consumed beer. R.B. and C.F. tested positive for alcohol.

The state charged Johnson with two counts of furnishing alcohol to minors, Minn.Stat. § 340A.503, subd. 2(1) (1986), and one count of possession of drug paraphernalia, Minn.Stat. § 152.092 (1986). The trial court denied Johnson's motion to suppress the statements and the pipes. Johnson was found guilty on all three counts.

## ISSUE

Did the trial court improperly admit the statements and the pipes over Johnson's fourth amendment objections?

## ANALYSIS

Warrantless searches are unreasonable per se unless justified by a recognized exception to the warrant requirement. *State v. Buschkopf*, 373 N.W.2d 756, 766 (Minn.1985). Johnson argues that the plain view doctrine does not apply since police unlawfully entered the apartment. He argues that the child detention statute [1] does not justify entry unless the state can establish that failure to act immediately would result in irreparable harm.

Neither the statute authorizing warrantless detention of runaway children, nor cases interpreting the statute require immediate and irreparable harm. The statute authorizes warrantless detention when police "reasonably believe" the child is in danger. *See In re Welfare of Scalzo*, 300 Minn. 548, 549–50, 220 N.W.2d 495, 496 (1974) (evidence in plain view not subject to exclusionary rule since police entered "with a reasonable belief that the child's health or welfare was endangered"); *Dennison v. Vietch*, 560 F.Supp. 435, 440 (D.Minn.1983) (evidence in plain view excluded since there was no credible evidence the police "were reasonably acting out of concern for the immediate welfare of the child"). As the state aptly points out, it would be ludicrous to require the police to allow the children to continue using drugs while someone went back to the courthouse to apply for a search warrant.

We believe that the officers' entry in this case was justified under the child detention statute and cases interpreting that statute. The facts here show that the police arrived in broad daylight and found a loud party in progress. They smelled alcohol and marijuana, and saw a marijuana pipe inside the apartment. They knew that L.D. and other juveniles were inside, and from the circumstances could reasonably believe that the children's welfare was in danger.

Even if immediacy and irreparable harm were required, the facts of this case meet the test. The police knew that the party was breaking up and that L.D. might leave with Hoppe and Johnson. Johnson admits that drug use could "impact" the juveniles' welfare. It must therefore be concluded that the juveniles could suffer irreparable harm unless the police immediately intervened.

Citing *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268

---

1. That statute provides:
   Subdivision 1. No child may be taken into immediate custody except:
       *    *    *    *    *    *
     (c) By a police officer
       *    *    *    *    *    *

    (2) when a child is found in surroundings or conditions which endanger the child's health or welfare or which such peace officer reasonably believes will endanger such child's health or welfare[.]
Minn.Stat. § 260.165 (1986).

(1978), Johnson further argues that the statements should be suppressed since there was no sufficient attenuation between the illegal search and the statements. We need not analyze this case under *Ceccolini* because we believe that the initial search was not illegal. The search is justified under the child detention statute, and the fruits of that search cannot be tainted.

## DECISION

Affirmed.